Laurence W. Paradis (SBN 122336)
Kevin Knestrick (SBN 229620)
DISABILITY RIGHTS ADVOCATES
2001 Center Street
Berkeley, CA 94704
Telephone: (510) 665-8644
Facsimile: (510) 665-8511
TTY: (510) 665-8716

Todd M. Schneider (SBN 158253)
Joshua Konecky (SBN 182897)
SCHNEIDER WALLACE COTTRELL
BRAYTON KONECKY LLP
180 Montgomery Street, Suite 2000
San Francisco, CA 94109
Telephone: (415) 440-3440
Fax: (415) 440-3640

Attorneys for Plaintiffs and the Class

Christopher J. Martin (SBN 82456)
Rachel S. Brass (SBN 219301)
GIBSON, DUNN & CRUTCHER LLP
555 Mission Street, Suite 3000
San Francisco, CA 94105
Telephone: (415) 393-8293
Facsimile: (415) 374-8429

Attorneys for Defendant
UNITED PARCEL SERVICE, INC.

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

ERIC BATES, BERT ENOS, BABARANTI OLOYEDE, ERIC BUMBALA, and EDWARD WILLIAMS on behalf of themselves and all others similarly situated,

Plaintiffs,

v.

UNITED PARCEL SERVICE, Inc.

Defendant.

Case No. C 99-2216 TEH

**JOINT NOTICE OF MOTION AND MOTION REQUESTING FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND APPROVAL OF ATTORNEY FEE AWARD**

Judge: Hon. Thelton E. Henderson
Date: December 13, 2010
Time: 10:00 a.m.
Place: Courtroom 12, 19th Floor

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

## TABLE OF CONTENTS


**I. History of Settlement Negotiations .......... 3**

**II. The Duration of the Hearing Protocol, Scope of Release, Status of Class Damage Claims, and the Resolution of Individual Damage Claims .......... 5**

**III. The Court Granted Preliminary Approval of the Agreeemnt and Ordered Notice Distributed to the Class .......... 6**

**A. Mailed Notice to the Class .......... 6**

**B. Published Notice to the Class .......... 7**

**C. Further Notice to the Class .......... 7**

**D. Objections to the Settlement .......... 8**

**IV. Modification and Extension of the Parties' Agreement .......... 8**

**A. Outcome of the One-Year Implementation of the Hearing Protocol .......... 8**

**V. The Court Should Grant Final Approval of the Agreement .......... 9**

**A. Rule 23 Requirements Remain Satisfied .......... 9**

**B. The Modified Agreement is Fair, Adequate and Reasonable .......... 10**

**C. The Payment of Damages to Seven Individuals is Appropriate .......... 12**

**VI. The Notice Plan Satisfied Due Process .......... 13**

**VII. The Court Should Approve the Agreed Upon Award of Reasonable Attorneys' Fees and Costs. .......... 13**


DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

## TABLE OF AUTHORITIES

**Cases**

*Bates v. UPS*, 2004 WL 2370633 (N.D. Cal. 2004). .......... 2,10

*Bates v. UPS*, 204 F.R.D. 440 (N.D. Cal. 2001).......... 10

*Bates v. UPS*, 511 F.3d 974 (9th Cir. 2007) .......... 2

*Churchill Vill L.L.C. v. General Elec.*, 361 F.3d 566 (9th Cir. 2004) .......... 10

*Class Plaintiffs v. City of Seattle*, 955 F.2d 1268 (9th Cir. 1992) .......... 10

*DeHoyos v. Allstate Corp.*, 240 F.R.D. 269 (W.D. Tex. 2007) .......... 13, 14

*EEOC v. UPS*, 306 F.3d 794 (9th Cir. 2002).......... 12

*EEOC v. UPS*, 424 F.3d 1060 (9th Cir. 2005).......... 12

*Goodyear v. Estes Exp. Lines , Inc.*, 2008 WL 687130 (S.D. Ind. 2008).......... 14

*Hanlon, Hanlon v. Chrysler Corp., 150 F.3d 1011* (9th Cir. 1998*)* .......... 14

*Hoirup, Jr. v. Prof'l Eng. in Cal. Gov.*, 2006 WL 2791158 (E.D. Cal. 2006).......... 14

*Majeske v. Fraternal Order of Police, Local Lodge No. 7*, 94 F.3d 307 (7th Cir. 1996).......... 13

*Martens v. Smith, Barney, Inc.*, 181 F.R.D. 243 (S.D.N.Y. 1998) .......... 13

*Nat'l Rural Telecomm. Coop v. DIRECTV, Inc.*, 221 F.R.D. 523 (C.D. Cal. 2004) .......... 11

*Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615 (9th Cir. 1982) .......... 10, 11

*Safeco v. Corp. v. Van Bronkhorst*, 529 F.2d 943 (9th Cir. 1976).......... 10

**Rules**

Rule 23(b)(2) of the Federal Rules of Civil Procedure.......... 9

Rule 23(e) of the Federal Rules of Civil Procedure.......... 9, 10, 13

**Regulations**

49 C.F.R. § 391.41(b)(11).......... 1

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

**NOTICE OF MOTION AND MOTION**

PLEASE TAKE NOTICE THAT on December 13, 2010 at 10:00 a.m., or on such other date as the Court may set the matter to be heard, Plaintiffs and Defendant United Parcel Service, Inc. ("UPS") (collectively referred to herein as "the Parties") will jointly move the Court for final approval of the parties' Final Settlement Agreement and Release (referred to herein as "Agreement" and attached as Exhibit A). The parties request that the Court enter the Proposed Order filed by the parties granting final approval of the settlement at of following the hearing on this motion.

As extensively recounted in the Parties' Motion for Preliminary Approval (Docket #624, filed June 15, 2009) this long-running class action case challenged UPS's employment practices under the Americans with Disabilities Act (ADA) and related California law, based on alleged discrimination because of Plaintiffs' impaired hearing. Plaintiffs alleged three broad categories of claims in their Complaint (as amended July 3, 2001): *accommodation* claims (whether UPS failed to provide reasonable accommodations in the job application process, and whether reasonable accommodations were provided to class members while at work); *promotion* claims (whether UPS discriminated against the class members by failing to promote them to supervisory and management positions); and *driving* claims (whether UPS impermissibly applied the Department of Transportation ("DOT") hearing standard, 49 C.F.R. § 391.41(b)(11), to all of its package delivery drivers, including those seeking to drive UPS vehicles with a Gross Vehicle Weight Rating ("GVWR"), under 10,001 pounds).

The *accommodation* and *promotion* claims were resolved in a class action settlement that the Court approved in 2003. The settlement resulted in extensive injunctive relief and a class damage award of $5.8 million.

The Parties, however, did not resolve the *driving* claims at that time. The Parties instead litigated those claims in a multi-week trial ending in December of 2003. In October 2004, the

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

Court issued Findings of Fact and Conclusions of Law addressing those claims. The Court found in favor of the plaintiff class members, and against UPS, concluding that UPS's application of the DOT hearing standard for all package car drivers was unlawful under the ADA and California's anti-discrimination laws. *Bates v. UPS*, 2004 WL 2370633 (N.D. Cal. 2004).

In its opinion, the Court stated that it was "not requiring that UPS allow all deaf driver applicants with the requisite seniority to become package-car drivers. Nor [was] it requiring, or even asking, UPS to compromise safety." *Id.* at *41. Rather, the Court ordered that UPS must perform an individualized assessment of otherwise eligible class members to asses their ability to become a package-car driver. *Id.* at *40. As part of that assessment, the Court ordered UPS to engage in an interactive process designed to identify specific accommodations that would enable the deaf individual to obtain driving work in vehicles with a GVWR of 10,001 pounds or less. *Id.* The Court also issued an injunction ordering UPS to cease using the DOT hearing standard to screen class members for package car driving positions for the under 10,001 pound vehicles within 30 days of its decision. *Id.* In November 2004, the Court granted UPS's motion to stay the Court's injunction order pending appeal, and as a result of the stay order, UPS continued to apply the DOT hearing qualification standard to all of its employees for all of its delivery vehicles.

The October 2004 order was then the subject of two appellate decisions, including a decision by the Ninth Circuit sitting *en banc*. *Bates v. UPS,* 511 F.3d 974, 983 (9th Cir. 2007). The *en banc* Court, in an opinion by Judge McKeown, clarified the standard for proving the business necessity defense under the ADA. Among other things, the panel made clear that Plaintiffs bear the ultimate burden of proving that they can safely drive UPS package cars and that UPS bears the burden to prove that use of the DOT hearing standard was justified by business necessity. The Court held that UPS may invoke the DOT hearing standard as evidentiary support for its qualification standard and left to this Court the determination of how much weight to give that evidence. The Court also stated that Plaintiffs could rely on the DOT's refusal to extend the hearing standard to vehicles with a GVWR less than 10,001 pounds as

evidence to support its contrary position. The Court vacated several of this Court's substantive rulings, including: (1) the order denying UPS's motion for partial findings and in the alternative to decertify the class; (2) the finding that UPS violated the ADA and California state law; and (3) the injunction. The Court remanded for further evaluation the "qualified individual" inquiry, and the analysis of reasonable accommodation.

## I. HISTORY OF SETTLEMENT NEGOTIATIONS

After the Court of Appeals remanded this case for further proceedings, the Parties entered into negotiations to attempt to resolve the driving claims. Those negotiations were protracted and extensive and included numerous meetings between counsel for the Parties, a two-day mediation with a well-respected and experienced third-party mediator, Antonio Piazza, and the subsequent assembling and convening of an Expert Panel. The Expert Panel was made up two audiologists, UPS' fleet manager, a UPS 23-year employee who works as a driver and has a history of hearing impairment, and the Honorable Edward A. Panelli (Ret.), of Judicial Arbitration and Mediation Services ("JAMS"). As a result of this process, the Parties entered into a Memorandum of Understanding (MOU) setting forth a framework for the Expert Panel, and the Expert Panel developed a Hearing Protocol, both of which are incorporated into the Parties' final Agreement.

In their MOU, signed in June 2008, the Parties agreed to appoint and designate an Expert Panel to develop a Hearing Protocol for UPS drivers and driver applicants who do not meet the hearing standard promulgated for commercial drivers by the United States Department of Transportation. The Parties agreed to a number of specific parameters regarding the appropriate scope of the Hearing Protocol, including:

- A Hearing Protocol may involve an alternative hearing screening for those employees unable to pass the DOT's hearing test;

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

- A Hearing Protocol will need to address methods for a "road test" for hearing impaired drivers, including alternative communication methods before and during the test, and may also include accommodations on the test itself;
- A Hearing Protocol would need to address methods for providing UPS's existing classroom training to hearing-impaired drivers and any additional classroom training needed to address any safety concerns associated with impaired hearing;
- A Hearing Protocol would need to address methods for providing UPS's existing on-road training to hearing-impaired drivers and any additional on-road training needed to address any safety concerns associated with impaired hearing;
- A Hearing Protocol would need to address methods for a supervisory ride-along during a hearing impaired driver's 30-day probationary period and any additional supervisory assessment needed to address any safety concerns associated with impaired hearing.

*See* Exhibit D to Agreement. The Expert Panel was convened in September 2008. After reviewing the detailed written submissions and supplemental submissions of the Parties, and conferring for an in-person session at the JAMS office in San Francisco in December 2008, the Hearing Protocol Expert Panel adopted a "Hearing Protocol Expert Panel Award" that established the following alternative standard for driver applicants seeking to drive vehicles with a GVWR of less than 10,000 pounds:

- The candidate must demonstrate, at either 1kHz or 2kHz, a binaural sound field threshold of 45 dB HL or better (ANSI-1989), with or without hearing aids, as measured by a licensed or certified audiologist following relevant and current ANSI standards;
- On-road testing and driver training to all individuals who pass the Hearing Protocol shall be provided in non-DOT regulated package cars;
- All UPS managers providing on road testing and driving training to individuals who pass the Hearing Protocol shall participate in training developed to facilitate more effective communication with hearing-impaired drivers and driver applicants.

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

*See* Exhibit A to Agreement. Additionally, the Hearing Protocol states that each candidate who applies for a position through the Hearing Protocol must have a driving record that does not otherwise disqualify him or her from a UPS driving position. Driving candidates must agree to release pertinent medical records to a UPS consulting physician and agree to periodic medical evaluations, either annually for employees with progressive hearing loss, more frequently if changes in the employee's condition indicate the need, and every two years for employees with stable hearing loss. Progressive hearing loss is characterized by a substantial chance of progressive or fluctuating hearing loss. Stable hearing loss includes hearing loss not expected to progress more rapidly than age-related changes. These additional procedures are consistent with UPS administration of its protocols for vision-impaired and diabetic drivers who operate non-DOT vehicles with a GVWR under 10,001 pounds.

The alternative hearing standard included in the Hearing Protocol differs from the DOT hearing standard in the following respects: (1) the forced whisper test is not used to evaluate hearing levels; instead, audiometric testing is the sole method used; (2) candidates are tested for hearing at the louder decibel level of 45 dbHL rather than the quieter 40 dbHL; (3) candidates are able to use both ears (binaural) rather than the average of the better ear to demonstrate hearing; and (4) candidates need only demonstrate the specified level of hearing at one frequency (1kHz or 2 kHz) as opposed to three frequencies (500Hz, 1,000Hz, and 2,000 Hz). As a result of these modifications, certain class members who would not have otherwise had the opportunity to qualify for a driving position and proceed through UPS's driver training program due to their inability to pass the DOT hearing standard, have that opportunity if open positions are available and the driver candidate has the requisite seniority. *See* Declaration of Laurence Paradis in Support of Final Approval of Settlement Agreement ("Paradis Decl.") submitted herewith, ¶21.

## II. THE DURATION OF THE HEARING PROTOCOL, SCOPE OF RELEASE, STATUS OF CLASS DAMAGE CLAIMS, AND THE RESOLUTION OF INDIVIDUAL DAMAGE CLAIMS

Initially, the Parties agreed to a one-year trial implementation of the Hearing Protocol to resolve Plaintiffs' claims for injunctive and declaratory relief, contingent on the Court's granting

preliminary approval of the proposed settlement. *See* Agreement at § 3.1.2. Class members' claims for damages for front pay, back pay, or other monetary damages for the driving claims were neither resolved nor released as part of that Agreement. *See generally* Agreement at § 5. The Parties agreed that the applicable statute of limitations and/or charging period for the tolled monetary claims of class members was to commence on the date preliminary approval of the settlement agreement was granted. *Id.* The sole exception was the resolution of the monetary claims of seven individuals: Four past and current UPS employees (Bert Enos, Babaranti Oloyede, Eric Bumbala, and Edward Williams) who actively pursued the driving claims in this lawsuit as named plaintiffs, and three current UPS employees (Elias Habib, Lester Morris, and Matthew Johnson) who filed a union grievance challenging UPS's use of the DOT hearing standard for non-DOT regulated vehicles that went to hearing before a national grievance committee. *See* Agreement at § 3.2. In exchange for a release of specified claims, these seven individuals received payments of $35,000 each. *Id.*

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

## III. THE COURT GRANTED PRELIMINARY APPROVAL OF THE AGREEEMNT AND ORDERED NOTICE DISTRIBUTED TO THE CLASS

Based on the terms of the Agreement described above, the Parties filed a Joint Motion for Preliminary Approval of the Settlement Agreement on June 15, 2009. On June 29, 2009 the Court held a hearing on the motion and granted preliminary approval. The Court determined that the proposed settlement was fundamentally fair, adequate and reasonable; affirmed the named plaintiffs ability to continue to act as representatives of the class; approved Disability Rights Advocates and Schneider Wallace Cottrell Brayton Konecky LLP to continue to act as Class Counsel; and directed notice to the class. *See* Docket No. 630.

### A. <u>Mailed Notice to the Class</u>

Mailed and published notice of the settlement was provided to the class on July 29, 2009, on the first day of the implementation of the Hearing Protocol. Mailed notice was provided to the last known addresses, including e-mail addresses if available, of all known class members employed by UPS during the period June 25, 1997, through December 31, 2008, and for deaf applicants for employment at UPS during the period June 25, 1997 through December 31, 2008

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

for whom UPS had such information. The Mailed Notice List was compiled using the most up to date information from UPS's records and the records maintained by Class Counsel. Rust Consulting, Inc. administered the notice. Rust Consulting updated the combined Mailed Notice List with new addresses where appropriate, based on information from the National Change of Address System. For Mailed Notice that was returned as undeliverable, Rust arranged for a computer database search for such class member, and then re-mailed the notice to those addresses.

The Notice informed class members of the availability of the Hearing Protocol, the commencement of their statute of limitations and/or charging period for filing a claim for monetary damages in another administrative or judicial proceeding, and of their right to object to the Settlement Agreement.

**B. <u>Published Notice to the Class</u>**

As a further means of notifying class members of the settlement the Parties agreed that 60 days after the Court granted preliminary approval (i.e. August 29, 2009) UPS would publish notice of the settlement in publications oriented towards the deaf community, including: NADezine (1 issue); Deaf Life (1 issue); and Deaf Digest (4 issues). The Parties further agreed that if published notice could not be provided in any of the publications within the prescribed time period, the Parties would meet and confer to select an appropriate substitute publication oriented towards class members. *See* Agreement at § 6.1.4.

Notice was published in Deaf Digest on August 16, 24, 30 and September 7, 2009; *See* Paradis Decl. ¶ 22. Notice was published in the September 2009 edition of Deaf Life. *Id.* Notice was published in Deaf Weekly on November 4, 2009. *Id.* Deaf Weekly was substituted as an alternative for NADezine because that publication is now defunct. *Id.*

**C. <u>Further Notice to the Class</u>**

In addition to providing mailed and published notice, UPS posted information regarding the availability of the Hearing Protocol on its employment websites. *See* Declaration of Tamara L. Caldwell ("Caldwell Decl.") at ¶ 3. Class Counsel also periodically sent class members for

whom it has email addresses, reminders about the availability of the Hearing Protocol. *See* Paradis Decl. ¶ 35.

**D. <u>Objections to the Settlement</u>**

The mailed and published notice indicated that the deadline for submitting an objection was November 26, 2009. Class members were directed to submit objections to the *Bates v. UPS* Settlement Administrator at Rust Consulting, Inc.

Rust Consulting received 2 objections. Class Counsel received an additional objection that was not submitted to Rust Consulting.

Copies of all objections received by Rust Consulting and Class Counsel, including those received after the deadline for objection, are attached as Exhibit B to this motion. As directed in the Order Granting Preliminary Approval to the Settlement, Class Counsel is, simultaneously with the filing of this motion, notifying all known objectors that this motion seeking Final Approval of the Settlement has been filed, and in that notification, Class Counsel has clearly stated the date for which this motion is noticed. Paradis Decl. ¶ 37. Class Counsel is also including a copy of this motion with that notification as required by the Court's Order. *Id.* Class Counsel will provide a sign language interpreter at the Fairness Hearing to ensure that any objector who appears will be heard by the Court. *Id.*

**IV. MODIFICATION AND EXTENSION OF THE PARTIES' AGREEMENT**

**A. <u>Outcome of the One-Year Implementation of the Hearing Protocol</u>**

At the conclusion of the one-year implementation period, UPS was obligated to "provide plaintiffs' counsel with summary data relating to the implementation of the hearing protocol, including a list of those employees and applicants evaluated under the Hearing Protocol, the status of those evaluations, and the outcomes for those individuals who have completed the Hearing Protocol evaluation." *See* Agreement at 3.1.3.

On August 20, 2010 UPS informed Class Counsel that due to the economic downturn, no driver position had become available during the one-year period for which employees sought to invoke the Hearing Protocol, and a thus, there was no data to produce. *See also* Caldwell Decl. ¶ 4. Thereafter the Parties met and conferred regarding the Hearing Protocol, as required by their

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

Agreement. As a result of those discussions the Parties agreed to add an amendment to their Agreement that extends the implementation of the Hearing Protocol for an additional two-year period and requires that UPS produce relevant data at the end of that time. *See* Exhibit C. The amendment states**:**

> Following the initial one-year implementation period pursuant to Section 3.1.2, the Hearing Protocol will be implemented for an additional two years (until July 29, 2012). At the conclusion of this two-year period, UPS will provide plaintiffs' counsel with summary data relating to the implementation of the Hearing Protocol, including a list of those employees and applicants evaluated under the Hearing Protocol, the status of those evaluations, and the outcomes for those individuals who have completed the Hearing Protocol Evaluation.

The Parties also amended the term of their Agreement regarding the Court's retention of jurisdiction to state:

> The District Court shall retain jurisdiction over the Agreement until the later of (a) the Termination of the Agreement pursuant to Section of the Agreement or (b) July 29, 2012.

Throughout its one-year implementation, UPS has continued to provide information regarding the availability of the Hearing Protocol on its employment websites in the same manner it provides information regarding the availability of the protocols for vision-impaired and diabetic driver applicants and will continue to do so during the two-year extension of the protocol. *See* Caldwell Decl. ¶¶ 3, 5.

The Parties respectfully submit that the Agreement, with these modifications is fair, adequate and reasonable and meets the requirements of Rule 23(e) of the Federal Rules of Civil Procedure.

## <u>ARGUMENT</u>

## V. THE COURT SHOULD GRANT FINAL APPROVAL OF THE AGREEMENT

### A. <u>Rule 23 Requirements Remain Satisfied</u>

On November 1, 2001 the Court certified a nationwide class of UPS employees pursuant to Rule 23(b)(2) of the Rules of Civil Procedure for the purpose of assessing UPS's liability under the ADA and determining whether injunctive and declaratory relief were warranted. The class was defined as:

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

> Those persons throughout the United States who (i) have been employed by and/or who have applied for employment with United Parcel Service (UPS) at any time since June 25, 1997 up through the conclusion of this action, (ii) use sign language as a primary means of communication due to a hearing loss or limitation, and (iii) allege that their rights have been violated under Title I of the Americans with Disabilities Act on account of UPS's polices and procedures.

*Bates et al. v. UPS*, 204 F.R.D. 440, 459 (N.D.Cal. 2001). The Court also certified a California subclass for the purpose of assessing UPS's liability under California's civil rights laws and determining the potential scope of injunctive and declaratory relief. That class was defined as:

> Those persons throughout California who (i) have been employed by and/or who have applied for employment with United Parcel Service (UPS) at any time since June 25, 1997 up through the conclusion of this action, (ii) use sign language as a primary means of communication due to a hearing loss or limitation, and (iii) allege that their rights have been violated under California civil rights laws on account of UPS's policies and procedures.

*Id.* In its Order following trial, the Court further modified the driving class so that it included "only those individuals who are affected by UPS's application of the DOT standard to all package-car driving positions." *See* 2004 WL 2370633, at *17.[1] The Parties request that the class definition and the Court's jurisdiction over the class remain intact during the Parties' two-year extension of the Hearing Protocol.

**B. <u>The Modified Agreement is Fair, Adequate and Reasonable</u>**

It is well established that settlement is the preferred means of dispute resolution, particularly in complex class litigation. *Safeco v. Corp. v. Van Bronkhorst*, 529 F.2d 943, 950 (9th Cir. 1976) (emphasizing that the policy in favor of settlement is "particularly true in class actions"); *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982); *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992); *Churchill Vill L.L.C. v. General Elec.*, 361 F.3d 566, 576 (9th Cir. 2004).

Final approval a proposed class action settlement should be granted where the proposed settlement is "fair, reasonable, and adequate." Fed. R. Civ. P.23(e). In determining whether to

[1] The en banc Ninth Circuit vacated this Court's order denying UPS's motion to decertify the class. For the purposes of seeking approval of the parties' Agreement and for that purpose only, UPS withdraws its previous objections to class certification.

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

grant final approval, "the Court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair reasonable and adequate to all concerned." *Officers for Justice*, 688 F.2d at 625.

The Court should balance "the strength of plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed, and the stage of proceedings; the experience and views of counsel; . . . and the reaction of the class members to the proposed settlement. *Id.* The relative importance of any particular factor will depend upon the nature of the claims, the types of relief sought, and the unique facts and circumstances presented by the individual case. *Id.* Furthermore, "[n]ot all of these factors will apply to every class action settlement. Under certain circumstances, one factor alone may prove determinative in finding sufficient grounds for court approval." *Nat'l Rural Telecomm. Coop v. DIRECTV, Inc.*, 221 F.R.D. 523, 525-26 (C.D. Cal. Jan 5, 2004)(citing *Torrisi v. Tuscon Elec. Power Co.*, 8 F.3d 1370, 1376 (9th Cir. 1993)).

This Court should find, after scrutinizing the Agreement in light of the factors set forth above, that the Agreement is fair, adequate and reasonable, and the Court should grant final approval.

For over a decade, the Parties have contested the legality of UPS's policy under which candidates for driving positions with the company must pass the DOT hearing standard. At this point in time, following remand of the case from the Court of Appeals of the Ninth Circuit sitting *en banc*, the ultimate outcome of this litigation remains as uncertain as ever, and the factual and legal contentions of the Parties continue to be vigorously disputed. The Parties negotiated at arms-length to reach agreement on the one-year implementation of the Hearing Protocol that was administered in a manner consistent with UPS's existing protocols for vision-impaired and diabetic drivers, one of which (the vision-protocol) has previously withstood judicial scrutiny.

*EEOC v. UPS*, 306 F.3d 794 (9th Cir. 2002) (ADA); 424 F.3d 1060 (9th Cir. 2005) (California claims). The Parties have now negotiated a two-year extension which will give class members further opportunities that they would not otherwise have to obtain work driving vehicles under 10,001 pounds.

Substantial risks exist for both Parties should this case return to litigation. UPS would move to decertify the class and dismiss the case in its entirety. Should the class overcome these hurdles, they face the prospect of another trial, and likely future appeals no matter what the outcome at trial. UPS faces the prospect of a second adverse liability finding and significant damages if liability is upheld. Further delayed resolution of the driving claims would be inevitable in this already lengthy action, and there is no certainty that either party will obtain favorable relief through further litigation. Already high discovery and litigation costs would continue to climb.

Furthermore, approval of the settlement is proposed here by experienced and reputable class action counsel with extensive experience in class action, disability rights, and employment discrimination litigation. Paradis Decl. ¶¶ 26-34. The Agreement reflects a compromise between the Parties struck with the assistance of an experienced mediator, Antonio Piazza, two recognized experts in the field of audiology, a retired jurist of the California Supreme Court, two UPS employees intimately familiar with the demands and requirements of driving UPS vehicles, and the Honorable Jeremy Fogel acting as a settlement judge on the fee and cost award. The fact that only 4 class members submitted objections out of a class numbering over 1,300 is further evidence that the settlement is reasonable.

**C. The Payment of Damages to Seven Individuals is Appropriate**

UPS's payment of $35,000 each to seven specified individuals in exchange for their release of driving claims is appropriate under the circumstances and should not be an obstacle to court approval. Class members were informed in the mailed and published notice of their right to seek monetary damages in the state or federal agency or court in the appropriate jurisdiction

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

and of the date when the statute of limitations on their claims began to run. Class Counsel advised numerous class members of their right to file individual damage claims. *See* Paradis Decl. ¶ 36. Moreover, court approval is appropriate even when class damages are waived as part of a settlement if the agreement implements structural reforms to remedy alleged civil rights violations. *Martens v. Smith, Barney, Inc.*, 181 F.R.D. 243, 265 (S.D.N.Y. 1998); *see, e.g., Majeske v. Fraternal Order of Police, Local Lodge No. 7*, 94 F.3d 307 (7th Cir. 1996) (approving Title VII settlement that altered promotion procedures but provided no backpay); *Handschu v. Special Servs. Div.*, 605 F. Supp. 1384 (S.D.N.Y. 1985), aff'd, 787 F.2d 828 (2d Cir. 1986) (approving settlement that reformed police investigative procedures but provided no damages). In this case, where damages claims are not yet certified, where liability is not established, and where no class damages release is being given, there are ample bases for finding that the settlement agreement is fair to absent class members.

## VI. THE NOTICE PLAN SATISFIED DUE PROCESS

The notice plan satisfied due process and complied with Rule 23(e)(1). In connection with the distribution of the mailed and published notice UPS made reasonable efforts to identify all members of the Driving Class, including reasonable inquiry to appropriate managerial personnel, to identify potential class members who have been employed by UPS, or applied for employment with UPS, since the time that the class list was compiled as part of the previous settlement in this case. *See* Caldwell Decl. ¶ 6. Information about the monetary payment to the seven specified individuals and the agreed upon sum of the attorney fee award was expressly disclosed in the Notice.

## VII. THE COURT SHOULD APPROVE THE AGREED UPON AWARD OF REASONABLE ATTORNEYS' FEES AND COSTS.

Negotiated and agreed-upon attorneys' fees as part of a class-action settlement are encouraged as an "ideal" towards which the parties should strive. *See DeHoyos v. Allstate Corp.*, 240 F.R.D. 269, 322-23 (W.D. Tex. 2007) (collecting cases). Courts are especially amenable to awarding negotiated attorneys' fees and expenses in a reasonable amount where that amount is in addition to and separate from the defendant's settlement with the class. *Id.* at 322.

Fees negotiated and paid separate and apart from the class recovery are entitled to a "presumption of reasonableness." *Id.* at 322-323; *see also Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998) (noting with approval that "class counsel and [defendant] did not negotiate or discuss attorneys' fees until after the final settlement."); *Goodyear v. Estes Exp. Lines , Inc.*, 2008 WL 687130, *5 (S.D.Ind.2008) (noting that when a court is presented with an "agreed-upon figure" and "the party who will bear the cost…has consented to [the] award" the sum is "presumptively reasonable."); *see also Hoirup, Jr. v. Prof'l Eng. in Cal. Gov.*, 2006 WL 2791158 (E.D.Cal.2006) ("[T]he commentary to Rule 23(h) and Rule 54(d)(2)(b) establish that fee agreements are relevant to what amount of fees should be awarded. . . . This is particularly true where the settlement of the fee claim is not linked to compromise of any other claim and is the result of arms-length negotiation by counsel for the parties who are thoroughly familiar with the case and knowledgeable in this area of the law.").

UPS has agreed to pay Class Counsel $5,250,000 to satisfy Class Counsel's claim for reasonable attorneys' fees and costs for all work reasonably incurred and related to litigation of the driver issue (including all pre-trial, trial and appellate work, settlement negotiations, and future work to secure preliminary and final approval, resolve any objections to this settlement in the trial or appellate courts, and the meet and confer that will occur at the end of the full year implementation of the Hearing Protocol). One-half was paid to Class Counsel two business days after the Court granted preliminary approval of the Agreement. The remaining one-half will be paid to Class Counsel two business days after this court grants final approval of the Agreement. If final approval is not granted, the first half of the payment of attorneys' fees would be returned to UPS.

**CONCLUSION**

For the reasons discussed above, Plaintiffs and Defendant request that the Court enter the Proposed Order granting final approval to this class action settlement, approve the payment of the remaining fee award; and retain jurisdiction for the purpose of enforcing the Parties' two year extension of the Hearing Protocol.

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

Respectfully submitted,

DISABILITY RIGHTS ADVOCATES

By: ________/s/_________________
Laurence W. Paradis
Attorneys for Plaintiffs and the Class

Dated: November 8, 2010

GIBSON, DUNN & CRUTCHER LLP

By: ___________/s/_____________
Christopher J. Martin
Attorneys for United Parcel Service, Inc.

Dated: November 8, 2010

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644